UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SYAH REDBIRD,<br><br>                          Plaintiff,<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,<br><br>                          Defendants. | Case No.  2:21-cv-00500-APG-VCF<br><br>**ORDER** |

Plaintiff Syah Redbird, who is incarcerated in the custody of the Nevada Department of Corrections (NDOC), filed a complaint in state court, which the defendants removed to this court. ECF No. 1.  It appears from the documents and the removal statement that removal to federal court was proper.  Because Redbird is a prisoner, I must screen the complaint under 28 U.S.C. § 1915A.  The defendants have also moved to dismiss some of Redbird's claims. ECF No. 5.  Because 28 U.S.C. § 1915A requires that I consider whether the complaint states a claim under Federal Rule of Civil Procedure 12(b)(6), I will incorporate the parties' arguments regarding the motion for dismissal into my screening order.

**I.      SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a).  The court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2).  *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d

696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The Prison Litigation Reform Act (PLRA) requires a court to dismiss a prisoner's claim if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint and construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a

plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id*. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

All or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**II.     SCREENING OF COMPLAINT**

Redbird sues the Las Vegas Metropolitan Police Department (LVMPD), Daniel Madrid, and Perry Crooks for events that took place while she[1] was incarcerated at Clark County Detention Center (CCDC). ECF No. 1-1 at 1, 3. She asserts six claims and seeks monetary

---

[1] Redbird uses female pronouns in her complaint. ECF No. 1-1 I will follow her preference and use female pronouns when referring to her.

relief.

The complaint alleges the following: On April 2, 2019, Redbird was a pretrial detainee at CCDC.  Redbird identifies as transgender, has a slight build and feminine appearance, and was undergoing hormone therapy while incarcerated.  The defendants were aware of these facts.

At some point on April 2, 2019, another inmate named Andrew Henley, who was facing charges for murder and other violent crimes, harassed Redbird and made fun of her appearance.  Redbird asked Henley to stop, and Henley responded, "Fuck you bitch, wait until I get my hands on you."  Redbird approached Madrid, a correctional officer, and told him about these threats.  Madrid stated that he would talk to the unit officer about the threats.

Later that day, Crooks, a correctional officer, came to Redbird's cell and told her and her cellmate that they were to be moved upstairs, which is where Henley was housed.  Redbird objected to being moved to the same area as Henley and told Crooks that Henley had threatened her.  Crooks responded that Redbird had to move or face discipline.

Redbird agreed to the move, and after she moved upstairs, Henley was seen talking and laughing with Crooks, as if they were good friends.  Henley then walked by Redbird's cell and said loudly enough for other inmates and possibly staff to hear, "you fucked up now faggot, I'm gonna smash you at chow."  Shortly thereafter, an inmate worker came to Redbird's cell and warned him to "be ready" at chow.  Redbird also heard Henley yelling to other inmates that Redbird had "told" on him and that Henley would "beat his ass" at chow.

At approximately 4:45 pm, Redbird was at dinner eating when she saw Henley approaching.  Redbird stood up to face him, and Henley smashed Redbird in the head with a dinner tray.  Henley proceeded to attack Redbird with his hands and feet, kicking Redbird repeatedly and knocking him unconscious.  Redbird was taken to the hospital and diagnosed with

a head injury, as well as lacerations of the scalp and face that required stiches and resulted in permanent scars.

Based on these allegations, Redbird brings Eighth and Fourteenth Amendment claims against Crooks and Madrid; *Monell* claims against LVMPD; a state law negligence claim against all defendants; a state law negligent training, supervision, and retention claim against LVMPD; a state law intentional infliction of emotional distress claim against Crooks; and a state law claim for abuse or neglect of a vulnerable person against all defendants.

### A. Eighth and Fourteenth Amendment Claims

#### 1. Proper Claim

The complaint alleges that Redbird was a pretrial detainee at the time of the alleged events. A pretrial detainee's right to be free from punishment is grounded in the Due Process Clause, though courts borrow from Eighth Amendment jurisprudence when analyzing the rights of pretrial detainees. *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008).

The defendants argue that Redbird's Eighth Amendment claims should be dismissed because, as a pretrial detainee, her claims arise under the Fourteenth Amendment. ECF No. 5 at 4. It appears Redbird pleaded guilty prior to the alleged incident but was sentenced after the incident. ECF No. 7 at 5. Redbird notes that district courts in the Ninth Circuit have split as to whether individuals who have pleaded guilty but not yet been sentenced should be treated as pretrial detainees or as convicted prisoners. *Id.* at 6; *compare Fitzpatrick v. Las Vegas Metro Police Dep't*, 2020 WL 560582 (D. Nev. 2020) (applying Eighth Amendment jurisprudence to such claims), with *Pitts v. Espinda*, 2016 WL 11696326 at n.4 (D. Haw. July 21, 2016) (applying Fourteenth Amendment jurisprudence.) Redbird takes no position as to whether her claims should be considered under the Eighth or Fourteenth Amendments, and instead argues that both

claims should proceed. ECF No. 7 at 6-7.  I decline to adopt Redbird's position that she should be allowed to proceed under both the Eighth and Fourteenth Amendments.  Her claims are governed by either the Eighth Amendment or the Fourteenth Amendment, not both.  In reply, the defendants ask that I resolve this conflict, but they take no position as to which claim should proceed.

      Although I am not aware of any cases in which the Ninth Circuit Court of Appeals has directly addressed whether the Eighth Amendment applies to individuals who have been convicted or pleaded guilty but have not yet been sentenced, the Ninth Circuit has repeatedly stated that the Eighth Amendment applies to individuals who have been convicted and sentenced. *See Glair v. City of Santa Monica*, 649 F. App'x 411, 412 (9th Cir. 2016) (holding that Eighth Amendment claims were properly dismissed because the plaintiff "was not convicted and sentenced for any violation."), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (stating that the "Eighth Amendment's prohibition of 'cruel and unusual punishments' applies only 'after conviction and sentence'" (quoting *Graham v. Connor*, 490 U.S. 386, 393 n.6 (1989))).  Although they are not directly on point, these statements from the Ninth Circuit Court of Appeals are persuasive.

      Because Redbird had pleaded guilty, the state had the power to punish her through incarceration, including harsh prison conditions that could rise to the level of punishment and would be prohibited for pretrial detainees under the Fourteenth Amendment.  But Redbird had not yet been sentenced to a term of incarceration as punishment for her crime.  Her incarceration at the time of the incident was not part of her sentence and punishment.  Rather, she was being detained pending sentencing.  As such, I find that Redbird claim's fall under the Fourteenth Amendment's due process clause and jurisprudence for pretrial detainees, rather than the Eighth

Amendment. Accordingly, I dismiss Redbird's Eighth Amendment claim with prejudice, as amendment would be futile.

### 2. Fourteenth Amendment Claim

A pretrial detainee states a claim for failure-to-protect against an individual officer under the Fourteenth Amendment if: (1) the defendant made an intentional decision with respect to the conditions under which the detainee was confined; (2) those conditions put the detainee at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the detainee's injuries. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

Redbird states a colorable claim against Madrid and Crooks. The complaint alleges that Redbird informed Madrid and Crooks that Henley had threatened her, and neither Madrid nor Crooks took appropriate action to ensure Redbird's safety. Despite being told of the threat, Crooks placed Redbird in the same housing area with Henley and took no steps to protect Redbird. As a result, Redbird was attacked. These allegations are sufficient to support a Fourteenth Amendment claim against Madrid and Crooks.

The defendants argue that when Redbird told Madrid about the threat, she was not in danger because she and Henley were not yet housed in the same area. Thus, the defendants argue, Madrid was not required to take any action to protect Redbird. I am not persuaded. Although Madrid may not have known definitively when, or even if, Redbird would encounter Henley, Madrid knew that a specific and serious threat had been made against Redbird and that it was possible that Redbird could encounter Henley if housed in the same area at CCDC. The fact

that Madrid did not know definitively if or when Redbird would encounter Henley next does not absolve Madrid of any responsibility for Redbird's safety. Redbird alleges that Madrid failed to take appropriate action to ensure that she was protected from Henley. This alleged failure on Madrid's part contributed to Redbird being moved to Henley's unit and the attack by Henley. As such, I deny the motion to dismiss Madrid from this claim.

### B. *Monell* Claim

A municipality may be found liable under 42 U.S.C. § 1983 only where the municipality itself causes the violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)). To state a claim for municipal or county liability, a plaintiff must allege that she suffered a constitutional deprivation that was the product of a policy or custom of the local government unit. *City of Canton*, 489 U.S. at 385. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipalities are not vicariously liable under § 1983 for their employees' actions. *Id.* at 60.

To adequately allege a custom, a plaintiff must allege facts sufficient to show a longstanding practice or custom that constitutes the standard operating procedure of the entity. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "The custom must be so 'persistent and widespread' that it constitutes a permanent and well settled city policy." *Id.* (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*

Redbird cites to *Karim-Panahi*, 839 F.2d at 621 (9th Cir. 1988), for the proposition that *Monell* claims should be construed very generously in a plaintiff's favor. The court in that case allowed *Monell* claims to proceed "even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." 839 F.2d at 624 (9th Cir. 1988) (quoting *Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986). But that case was decided prior to *Iqbal* and *Twombly*. Since then, the Ninth Circuit has recognized that a complaint must include factual allegations that go beyond a formulaic recitation of a cause of action's elements. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Twombly* 550 U.S. at 555 (2007).

Redbird fails to state a colorable *Monell* claim. She vaguely alleges that the LVMPD and Doe Defendants VII-X "enforced, and applied an officially recognized custom, policy and practice," of among employing and retaining officers who failed to follow written policies, inadequately training officers, failing to discipline officers, showing a reckless disregard for the safety and wellbeing of gender nonconforming inmates, failing to properly train officers on the increased risk of harm gender nonconforming inmates face, and failing to properly train officers on housing moves.

But Redbird does not allege any facts to support these conclusory allegations. In her response brief, Redbird provides examples for potential *Monell* liability, arguing that a *Monell* claim would exist as if officers were trained to inform inmates that another inmate had complained about them, or if officers were trained to ignore complaints made by transexuals. But the complaint does not allege that either of those is the policy or custom of LVMPD. In her response, Redbird also argues that CCDC had only a single protective custody unit, which led to Redbird, who was likely in protective custody because she was transgender, being housed with

9

Henley, who was in protective custody because he was so dangerous. But this policy is not mentioned in the complaint.

Redbird also points to a paragraph in the complaint which notes the number of complaints under the Prison Rape Elimination Act of 2003 (PREA) at CCDC, and she argues that this demonstrates that LVMPD is deliberately indifferent to sexually motivated offenses. But it is not clear how the number of PREA complaints demonstrates that LVMPD is indifferent to the safety of transgender inmates. As an initial matter, the fact that a complaint has been filed does not mean that it has any validity. Furthermore, PREA complaints can potentially cover a wide variety of issues, many of which are not related to the safety of transgender inmates, which is the basis of this action. Redbird's reference to the number of PREA complaints filed at CCDC is not sufficient to support a *Monell* claim against LVMPD.

In the complaint, Redbird does not point to any specific, official policy of LVMPD that led to the alleged violations. Nor does Redbird point to any specific practices or customs that were so persistent and widespread that they constituted a settled policy. The complaint amounts to no more than conclusory allegations that LVMPD failed to properly train and supervise employees, and LVMPD's policies failed to protect inmates. Such vague, conclusory allegations are insufficient to state a claim. *See, Correa v. Las Vegas Metro. Police Dep't*, No. 2:16-cv-01852-JAD-NJK, 2016 WL 7320879, at *4 (D. Nev. Dec. 15, 2016) (explaining that a conclusory allegation that LVMPD had a policy allowing excessive force through managerial officials' "failure to properly train and supervise" was insufficient to state a plausible claim under *Iqbal* and *Twombly*). Accordingly, I dismiss this claim without prejudice and with leave to amend. If Redbird wishes to pursue this claim in an amended complaint, she must allege specific facts showing the alleged constitutional deprivation was the result of LVMPD's policy or

custom.

### C. Negligence

To establish a negligence claim under Nevada law, a plaintiff must assert: "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal–Mart Stores, Inc.*, 221 P.3d 1276, 1280, 125 Nev. 818, 824 (Nev. 2009) (citation omitted). The Supreme Court of Nevada has stated that as a general rule, "state officials have a duty to exercise ordinary care in performing their duties." *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1065, 123 Nev. 450, 464 (Nev. 2007) (citing *State v. Silva*, 478 P.2d 591, 592, 86 Nev. 911, 914 (Nev. 1970)).

#### 1. Crooks and Madrid

Redbird states a negligence claim against Crooks and Madrid. The defendants do not contest the existence of a negligence claim against Crooks. As for Madrid, the defendants first argue that because the complaint did not allege that Madrid knew that Redbird would be moved to Hensley's unit, Madrid did not have an obligation to take any steps beyond notifying the unit officer about the threat. The complaint does not allege that Madrid notified the unit officer, only that Madrid told Redbird that he would notify the unit officer. Whether Madrid followed through on this promise is not known.

That complaint alleges that Redbird notified Madrid of a specific threat to his life from a specific inmate, and that later that same day Redbird was placed near that inmate and attacked. These allegations are sufficient to support a colorable claim that Madrid breached his duty to Redbird by failing to take steps to ensure Redbird's safety.

The defendants also argue that any negligence claim is barred by Nevada's discretionary immunity statute. Nevada Revised Statutes § 41.032 provides immunity to state employees or

11

any state agency or political subdivision for claims that are "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(2). Under Nevada law, "to fall within the scope of discretionary-act immunity, a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Martinez v. Maruszczak*, 168 P.3d 720, 727 (Nev. 2007).

The defendants cite to *Sells v. McDaniel*, No. 3:08-cv-170-BES-RAM, 2009 WL 3464982 for the proposition that a decision regarding housing of prisoners falls within discretionary immunity. But *Sells* involved a motion for summary judgment, not a motion to dismiss. At this point, it is not clear what decisions Madrid made regarding Redbird's safety. I thus cannot determine whether any decisions Madrid made regarding Redbird involved individual judgment or were based on considerations of social, economic, or political policy. Accordingly, I deny the motion to dismiss the negligence claim against Madrid.

### 2. LVMPD

Redbird fails to state a negligence claim against LVMPD. Redbird alleges that LVMPD breached its duty to Redbird by failing to "to maintain adequate policies and procedures for protecting inmates from harm by other inmates, to include protection of gender nonconforming inmates in the jail setting." But she does not include any facts to support the conclusory allegation that the policies were inadequate.

Redbird argues that at the pleading stage she is not required to specify how LVMPD's policies were deficient, and that it is sufficient simply to allege that LVMPD failed to promulgate reasonable policies. But conclusory allegations, such as Redbird's vague allegations of inadequate policies, are not entitled to the assumption of truth and must be supported with factual

allegations. *Iqbal*, 556 U.S. at 679. The complaint does not include any factual allegations to support Redbird's conclusory statements about inadequate policies, and thus the allegations are insufficient to state a claim against LVMPD. I dismiss the negligence claim against LVMPD without prejudice and with leave to amend. If Redbird wishes to pursue this claim in an amended complaint, she must include factual allegations to support her conclusory claims that LVMPD's policies were deficient.

### D. Negligent Training, Supervision, and Retention

As discussed *supra* in Section II(C)(1), Nevada Revised Statutes § 41.032 provides immunity for claims that are based on the exercise of discretionary functions. Nevada looks to interpretations of the Federal Tort Claims Act for guidance on what conduct is protected by discretionary immunity. *Martinez*, 168 P.3d at 729. The Ninth Circuit and other circuits have held that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (collecting cases). However, actions taken in bad faith are not within an actor's discretion. *Falline v. GNLV Corp.*, 823 P.2d 888, 892 n.3 (Nev. 1991). The Supreme Court of Nevada recently affirmed that § 41.032 applies to claims of negligent hiring, training, and supervision. *See Paulos v. FCH1, LLC*, 136 Nev. 18, 25, 456 P.3d 589, 595 (2020).

Redbird's claim for negligent hiring, training, supervision, and retention are barred by discretionary immunity. Despite the *Paulos* decision that § 41.032 applies to such claims, Redbird argues that LVMPD's decisions about training, supervision, and retention were done in bad faith. But the allegations in the complaint about LVMPD are entirely conclusory. The complaint does not include any specific allegations that would support that LVMPD acted in bad

faith in its decisions about training, supervision, or retention.

Accordingly, I dismiss this claim without prejudice and with leave to amend. If Redbird wishes to pursue this claim in an amended complaint, she must allege specific facts sufficient to support that LVMPD acted in bad faith in its decisions about training, supervision, or retention.

### E. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the distress. *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted).

Redbird fails to state a colorable claim of intentional infliction of emotional distress. The complaint contains a conclusory allegation that Redbird suffered "humiliation, anxiety, embarrassment, and severe emotional distress," but it does not explain the nature of that emotional distress or any factual allegations to support that it was "severe or extreme." In her response brief, Redbird states that after moving her to "a cell near Henley, Crooks left her there to sob in fear for hours as Henley yelled threats throughout the cell block." But those allegations are not part of the complaint. Because the vague, conclusory allegations in the complaint are insufficient to support that Redbird suffered severe or extreme emotional distress, I dismiss this claim without prejudice and with leave to amend.

/ / / /

### F. Abuse or Neglect of a Vulnerable Person

Redbird brings a claim under Nevada Revised Statutes § 41.1395, which provides protection for "vulnerable" persons. The statute defines vulnerable as a person who: "(1) Has a physical or mental impairment that substantially limits one or more of the major life activities of the person; and (2) Has a medical or psychological record of the impairment or is otherwise regarded as having the impairment." The term "vulnerable" includes, "without limitation, a person who has an intellectual disability, a person who has a severe learning disability, a person who suffers from a severe mental or emotional illness or a person who suffers from a terminal or catastrophic illness or injury." *See* Nev. Rev. Stat. § 31.1395(e).

I have previously held that § 41.1395 does not create a stand-alone cause of action but provides for special damages for other claims. *Borenstein v. Animal Found.*, No. 2:19-cv-00985-APG-DJA, 2021 WL 1035100, at *7 (D. Nev. Mar. 17, 2021). Redbird concedes that case law does not clearly support that § 41.1395 provides a separate cause of action, but she argues that a recent Supreme Court of Nevada decision seems to embrace "elder abuse" under § 41.1395 as a distinct claim from negligence. Redbird also argues that even if § 41.1395 does not allow for an independent claim, the allegations in the complaint are sufficient to provide for special damages under that statute. Because Redbird has not sufficiently pleaded that she was a vulnerable person under § 41.1395, I need not resolve this issue.

Redbird alleges that she suffers from gender dysphoria, depression, anxiety, and post-traumatic stress disorder. She also alleges that her impairments "limit one or more major life activities," including interacting with others, social functioning, and reproducing.

Even accepting Redbird's vague statements regarding her mental health and her limitations, the allegations are insufficient to support that she has a "severe" mental or emotional

illness or that it "substantially" limits any major life activity. As such, I dismiss this claim without prejudice, and with leave to amend.

## III.   LEAVE TO AMEND

I grant Redbird leave to file an amended complaint to cure the deficiencies of the complaint. An amended complaint supersedes the original complaint so the amended complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). Redbird's amended complaint must contain all claims, defendants, and factual allegations that she wishes to pursue in this lawsuit.

If Redbird chooses to file an amended complaint curing the deficiencies outlined in this order, she must file the amended complaint by **September 17, 2021**. If she chooses not to file an amended complaint, this action will proceed on Redbird's colorable claims, as discussed in this order.

## IV.   CONCLUSION

I therefore order that the complaint located at ECF No. 1-1 be filed as the operative complaint by the Clerk of the Court.

I further order that Redbird's Eighth Amendment claims are dismissed with prejudice, as amendment would be futile.

I further order that Redbird's failure to protect claim under the Fourteenth Amendment will proceed against Crooks and Madrid.

1    I further order that Redbird's *Monell* claims are dismissed without prejudice and with leave to amend.

2    I further order that Redbird's state law negligence claim will proceed against Crooks and Madrid.

3    I further order that Redbird's negligence claim against LVMPD is dismissed without prejudice and with leave to amend.

4    I further order that Redbird's state law negligent training, supervision, and retention claim is dismissed without prejudice and with leave to amend.

5    I further order that Redbird's state law intentional infliction of emotional distress claim is dismissed without prejudice and with leave to amend.

6    I further order that Redbird has not sufficiently pleaded that she is a vulnerable person under Nevada Revised Statutes § 41.1395, so I dismiss any independent claim or any claim for special damages under this statute without prejudice and with leave to amend.

7    I further order that, to the extent that this order is inconsistent with the defendants' motion to dismiss (ECF No. 5) the motion to dismiss is DENIED.

8    I further order that, if Redbird chooses to file an amended complaint curing the deficiencies of her complaint as outlined in this order, she will file the amended by **September 17, 2021**.

9    I further order that, if Redbird fails to timely file an amended complaint, this action will proceed on Redbird's colorable claims, as outlined in this order.

DATED THIS  17th day of August 2021.

_____
UNITED STATES DISTRICT JUDGE